**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**PATRICIA GERMAN,**

      **Plaintiff,**

                                   **Civil Action 2:12-cv-292**
   **v.**                            **Judge James L. Graham**
                                   **Magistrate Judge Elizabeth P. Deavers**

**MICRO ELECTRONICS, INC.,**

      **Defendant.**

**ORDER**

Plaintiff, Patricia German, brings this employment action against Defendant, Micro

Electronics, Inc. ("MEI"), asserting claims arising under the Americans With Disabilities Act, 42

U.S.C. § 12101 *et seq*. ("ADA") and the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*.

("FMLA"). Plaintiff also advances state-law discrimination and emotional distress claims. This

matter is before the Court for consideration of MEI's Motion to Compel Discovery (ECF No.

29), Plaintiff's Memorandum in Opposition (ECF No. 32), and MEI's Reply (ECF No. 33). For

the reasons that follow, MEI's Motion is **GRANTED IN PART AND DENIED IN PART**.

**I.**

**A.**    **Background**

MEI employed Plaintiff for over twelve years before terminating her in October 2010.

Plaintiff suffers from depression, bipolar depression, degenerative disc disease, and panic

attacks. A fall in April 2008 exacerbated her medical conditions, and throughout 2009, her

disabilities prevented her from coming to work.

According to Plaintiff, MEI initially accommodated her medical conditions. The parties

agreed upon accommodations, including a flexible start time, installation of automatic doors, and permission to work from home without consuming FMLA days.  Upon Plaintiff's return to work on January 8, 2010, however, her supervisor required her to complete FMLA paperwork.  Five days later, Plaintiff reported that she was unable to come to work due to her degenerative disc disease.  Over the next several months, Plaintiff frequently availed herself of FMLA leave. Plaintiff alleges that in June 2010, her supervisor informed her that she would not receive a raise because of her excessive use of FMLA time.  She also alleges that MEI's human resource manager, Angie Miller, informed her that she would be terminated upon exhaustion of her FMLA days.  In July and August 2010, Ms. Miller denied Plaintiff's requests for her weekly hours to be reduced to thirty-two or thirty-six.  According to Plaintiff, in September 2010, Ms. Miller informed her that no further accommodations would be granted.  Plaintiff alleges that in October 2010, an unnamed individual informed her that several days she missed in September would be counted as FMLA days.  She further alleges that on October 20, 2010, an unnamed individual informed her that she would have to leave work and could not return until she obtained a letter of fitness from her physician.  Plaintiff agreed to apply for short-term disability. After turning in the application paperwork, Plaintiff received an email from Ms. Miller indicating that she had resigned.  Plaintiff alleges that although she disputed this characterization, Ms. Miller refused to change her employment status.

Plaintiff filed this action in February 2012.  In her Complaint, Plaintiff alleges that MEI discriminated against her and ultimately terminated her because of her disabilities and in retaliation for her use of FMLA leave in violation of the FMLA, ADA, and Ohio Revised Code Section 4112.02.  She further alleges MEI improperly characterized sick days as FMLA days and

2

interpreted her application for short-term disability as a voluntary resignation in violation of the FMLA.  Plaintiff also advances state-law claims of intentional and negligent emotional distress, alleging that MEI's actions caused her to experience severe emotional distress and exacerbated her pre-existing medical conditions.

**B.**     **MEI's Motion to Compel**

In May 2012, MEI served interrogatories and document requests seeking, among other things, information and documents relating to Plaintiff's mitigation efforts, the accommodations she requested, her blogging and other online activity, and her record-keeping documents. Plaintiff initially refused to respond or denied the existence of documents responsive to these discovery requests.  For example, in her initial discovery responses, Plaintiff represented that she "has not posted any online information relating to the allegations in her complaint."  (Pl.'s June 6, 2012 Responses to Def.'s Ints. ¶ 5, ECF No. 29-5; s*ee also* Pl.'s June 6, 2012 Responses to Def.'s Doc. Reqs. ¶ 10, ECF No. 29-6 ("Plaintiff avers that she has not publically posted any online information concerning her position at Micro Electronics, Inc. or the subject matter of this lawsuit.").)  Plaintiff's initial responses prompted MEI to ask the Court to hold an informal telephonic discovery conference.

The Court held the discovery conference on July 12, 2012.  In connection with the conference, the parties submitted a brief summary outlining the various disputes and their respective positions with regard to those disputes.  MEI offered evidence of several internet articles that Plaintiff had published that related to her health, wellness, and work, belying her prior representation that such documentation did not exist.  The Court issued an Order memorializing the conference.  (ECF No. 23.)  In pertinent part, the Order provides as follows:

> Upon review of the parties' argum ents and consider ation of the additional information conveyed during the conference, the undersigned concluded that Plaintiff's positions with respect to the outstanding issues were indefensible. The Court urged Plaintiff's counsel to reach an agreement with Defendant's counsel with regard to the outstanding issues by the close of business on July 13, 2012. *The Court cautioned Plaintiff's counsel that if an extrajudicial resolution could not be reached such that Defendant was forced to file a motion to compel, the Court would compel Plaintiff to respond to Defendant's discovery requests and would require Plaintiff's counsel to pay Defendant's expenses incurred in making the motion, including attorneys' fees, pursuant to Rule 37(a)(5)(A).*

(July 13, 2012 Order, 1–2, ECF No. 23) (emphasis added).

Thereafter, Plaintiff amended her discovery responses. On July 31, 2012, and again on August 31, 2012, MEI's counsel sent correspondence to Plaintiff's counsel outlining in detail the deficiencies it believed remained in her production. (ECF Nos. 29-9 and 29-10.) Plaintiff's counsel responded on September 5, 2012, providing some supplemental information and representing that Plaintiff had nothing more to produce. (ECF No. 29-11.) Plaintiff's counsel further indicated that production of Plaintiff's calendars and online activity in the manner MEI proposed was not feasible due to Plaintiff's financial condition and health. Plaintiff's counsel explained that Plaintiff could not afford to make copies, and her "advancing carpal tunnel [made] it increasingly difficult for her to do anything with her hands or writs, including the clicking of a touchpad on a [laptop], and even the advancing of a screen on her ipad." (*Id*. at 1.)

MEI filed the subject Motion to Compel on October 3, 2012. According to MEI, Plaintiff either failed to respond, failed to fully respond, or submitted false or contradictory responses to a number of its written discovery requests. Specifically, MEI posits that Plaintiff's responses to Interrogatory Numbers 4, 5, 9, and 12 and Document Request Numbers 9, 10, 12, 13, and 29, which relate to her mitigation efforts, the accommodations she requested, her blogging and other online activities, and her calendars and record-keeping documents, remain deficient. MEI seeks

an award of costs and attorneys' fees it expended in connection with its attempts to resolve these ongoing discovery disputes and in bringing this Motion.  Plaintiff opposes MEI's Motion, asserting that she has already produced all responsive information and documents in her possession or recollection and that an award of sanctions would be unjust.

## II.

MEI has moved the Court for an order compelling Plaintiff to respond to its discovery requests.  Federal Rule of Civil Procedure 37 permits a party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided that the motion to compel includes a certification that the movant has, in good faith, conferred or attempted to confer with the party failing to respond to the requests.  Fed. R. Civ. P. 37(a)(1). The Court is satisfied that this prerequisite to a motion to compel has been met in this case.

Determining the scope of discovery is wiJanuary 10, 2013thin this Court's discretion. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998).  As the United States Court of Appeals for the Sixth Circuit has recognized, "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad."  *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998).  In particular, discovery is more liberal than the trial setting, as  Rule 26(b) allows any "line of interrogation [that] is reasonably calculated to lead to the discovery of admissible evidence." *Id.* (quoting *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir. 1970)).  In other terms, the Court construes discovery under Rule 26 "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  In considering the scope of discovery, the Court may balance Plaintiffs' "right to discovery with the

need to prevent 'fishing expeditions.'" *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 907 (6th Cir. 2009) (quoting *Bush*, 161 F.3d at 367).

**III.**

As set forth above, MEI's Motion to Compel asks the Court to compel Plaintiff to fully and accurately respond to its requests relating to her mitigation efforts, the accommodations she requested, her blogging and other online activities, and her calendars and record-keeping documents. The Court considers the parties' arguments on these respective requests in turn.

A.    **Mitigation of Damages**

Interrogatory Number 12 and Document Request Number 29 relate to Plaintiff's mitigation efforts. Interrogatory Number 12 queries whether Plaintiff has applied for any employment since October 2010 and if so, for each application, to provide:  the name, address, telephone number of the prospective employer; the dates Plaintiff applied; the job title or nature of the job; whether she received a response; the date and substance of any such response; whether she interviewed with the prospective employer; the date and substance of any such interview; whether she received and offer of employment or, if not, the reasons for rejection, if expressed; the compensation and benefits of any positions offered; whether Plaintiff accepted any offer of employment or, if not, her reasons for rejecting any offer.  (Def.'s Ints. 10, ECF No. 29-3.)  Document Request Number 29 requests that Plaintiff produce all documents relating to her efforts to mitigate her damages, "including, but not limited to all documents showing any efforts to obtain employment . . . whether or not successful, from October 1, 2010 though the present." (Def.'s Doc. Reqs. 12, ECF No. 29-4.)

Plaintiff responded to these discovery requests as follows:

> Plaintiff has now made available in her latest discovery production a full, complete, and comprehensive spreadsheet of her employment applications since October 27, 2010.  Plaintiff discloses that, as a condition of her unemployment, she has completed at least two applications for employment per week since March 2011.

(Pl.'s Responses to Def.'s Ints. 5, ECF No. 29-7; Pl.'s Responses to Def.'s Doc. Reqs. 7, ECF No. 29-8.)  In her Responses to MEI's Interrogatories, she adds that she has not received any offers of employment.  Plaintiff produced a document titled "Mitigation and Job Lists," which she described within the document as a "partial list" of jobs.  (Pl.'s Mit. & Job List 1, ECF No. 29-12.)  The list does not identify any jobs for which Plaintiff applied in March 2011 and does not include any jobs between April 2011 and April 2012.  With the exception of one entry, Plaintiff does not indicate whether she received a response or was interviewed.  Plaintiff indicates that she interviewed with a company in May 2011, but does not indicate whether the prospective employer offered her reasons for not extending an offer of employment.  Plaintiff subsequently supplemented her response with a spreadsheet titled "monster.com Job searches - partial list of searches 3/2011 - present."  (Pl.'s Job Search Spreadsheet, ECF No. 29-13.)  This spreadsheet only listed jobs titles and addresses of prospective employers from April 2011 through July 2012.  Plaintiff did not produce any documents in response to Document Request 29.

In her opposition to MEI's Motion to Compel, Plaintiff contends that she has produced all of the information available to her concerning her mitigation efforts.  She concedes that the list she provides is only a partial one, but submits that any missing information is attributable to her inability to remember or find the information.  She indicates that the list of job searches she provided represents actual applications filled out to her during the course of her unemployment.

Plaintiff adds that "Defendant is well aware that Plaintiff conducted her job search almost exclusively by electronic, internet-based applications.  Such applications provide only an email confirmation, with limited information about the original posting."  (Pl.'s Mem. in Opp. 7, ECF No. 32.)

MEI, in its Reply, insists that Plaintiff's responses remain deficient.  MEI posits that Plaintiff's disclosure of the existence of email confirmations she received in connection with her applications and her failure to produce these emails undermines her representation of full disclosure.  MEI asserts that it should not be expected to assume that information omitted from Plaintiff's discovery responses is unavailable to her or that her list of job searches reflected that she applied for the position.  MEI further maintains that it is implausible that any information omitted is attributable to Plaintiff's inability to remember it, adding that Plaintiff should be able to recall whether she was granted an interview.

MEI correctly submits that it is not required to assume that information omitted from Plaintiff's discovery responses is unavailable to her.  Rather, if accurate, Plaintiff should specifically state that no other responsive documents exist and that she is unable to recollect the requested information.  *See Mitchell v. Cty. of Warren*, No. 09-CV-11480, 2012 WL 1405856, at *3 (E.D. Mich. Apr. 23, 2012) ("If no such documents exist which have not already been produced Defendants must state as much in their response."); *Lawroski v. Nationwide Mut. Ins. Co.*, No. 2:11-cv-1074, 2012 WL 6568230, at *3 (S.D. Ohio Dec. 17, 2012) ("If Defendants' representations are accurate and no such documents exist, Defendants should clearly state that to be the case in their responses to Plaintiff's discovery requests. . . . Defendants' failure to state that no responsive documents exist implies that the opposite is true."); *Grant v. Target Corp.,*

281 F.R.D. 299, 313 (S.D. Ohio Mar. 14, 2012) (noting that it is proper for a party responding to discovery requests to "simply state . . . that he does not have these types of documents or that these documents do not exist").  Likewise, if Plaintiff actually applied for the jobs she lists in the document she titles "monster.com Job searches - partial list of searches 3/2011 - present," she must explicitly state so.  Here, MEI's interpretation of Plaintiff's responses as incomplete and evasive is especially reasonable given the paucity of her responses and production and also her history of making false misrepresentations concerning the existence of information.  *Cf. Westfield Ins. Co. v. Milan 2000 Furnishings, LTD*, No. 11-cv-12773, 2012 WL 5258263, at *7 (E.D. Mich. Oct. 24, 2012) (characterizing party's failure to "specifically state that no other documents exist" as "evasive and inferentially incomplete").

Finally, the Court agrees with MEI that the email confirmations Plaintiff first disclosed in her Memorandum in Opposition are relevant, discoverable, and responsive to Document Request 29.  Insofar as these confirmations are still accessible, Plaintiff must produce them.  If these emails have been deleted and are no longer accessible, consistent with MEI's First Request for Production of Documents, Plaintiff must provide the information requested under the subheading "LOST OR DESTROYED DOCUMENTS."  (Def.'s Doc. Reqs. 4–5, ECF No. 29-4.)

In sum, Plaintiff is **ORDERED** to fully respond to Interrogatory Number 12 and Document Request 29.  If, after a good faith investigation, Plaintiff is unable to provide the requested information, she must explicitly state so under oath in a verified interrogatory response.

**B.  Accommodations Requested**

Interrogatory Number 9 asks Plaintiff to identify each accommodation she requested and to identify the date of each such request; the individual from whom she sought the accommodation; whether it was granted and if so, for how long; and the date when any accommodation was no longer provided.  (Def.'s Ints. 10, ECF No. 29-3.)  Plaintiff responded to this Interrogatory as follows:

> Plaintiff has now made available in her latest discovery production a full, complete, and comprehensive list of the date and nature of the accommodations sought from Defendant.  The date and nature of accommodations sought by Plaintiff are listed in her complaint.  Further Defendant should already possess a record of all accommodations requested by Plaintiff in her personnel file and employment records.

(Pl.'s Responses to Def.'s Ints. 5, ECF No. 29-7.)  Plaintiff provided a list on August 13, 2012, and another list on September 5, 2012.

According to MEI, both of these lists are deficient in that neither contain all of the requested information.  For example, MEI notes that Plaintiff has failed to identify the individuals from whom she allegedly requested each accommodation.  MEI states that "[i]t is difficult to believe that Plaintiff can recall the time frame of certain accommodations she allegedly requested but that she cannot recall from who[m] she requested each accommodation." (Def.'s Reply 7, ECF No. 33.)  In her Memorandum in Opposition, Plaintiff represents that she has responded to Interrogatory Number 9 "as completely and honestly as possible, and now believes she ha[s] produced all information she is capable of producing."  (Pl.'s Mem. in Opp. 9, ECF No. 32.)  She explains that she "intends any omission of information to be taken as an admission that she does not possess or recollect it."  (*Id.*).

Beyond expressing its incredulity that Plaintiff cannot remember the information it

10

requests, MEI has offered no evidence suggesting she possesses additional information responsive to Interrogatory Number 9 that she is refusing to supply.  The Court cannot compel Plaintiff to provide information she does not possess any more than it can compel her to produce documents that do not exist.  As explained above, however, to the extent Plaintiff is unable to provide the information requested after a good faith investigation, she must explicitly state so under oath in a verified interrogatory response.

## C.      Blogging & Online Activity

Interrogatory Numbers 4 and 5 and Document Requests 9 and 10 ask Plaintiff to identify any online accounts and any blogs or Internet websites she currently uses or has used during the relevant time period and to produce any online postings, blogs, or other online activity that relate to her employment, health or the subject matter of this litigation.  MEI did not designate a specific format for producing any responsive electronically stored information ("ESI").  MEI subsequently agreed to narrow the scope of these requests to blogs, social media sites, postings and similar online activities where Plaintiff addressed her workplace, health condition, or other issues raised in her Complaint since January 1, 2009.

As set forth above, in Plaintiff's initial discovery responses, she did not produce any responsive documents and represented that she had not posted any online information relating to any of the allegations in the complaint.  After MEI confronted Plaintiff and provided this Court with evidence of several internet articles she published that related to her heath, wellness, and work, she produced some documents relating to her online posting and journaling activity.  MEI apprised Plaintiff that it considered her production to be deficient, identifying additional responsive postings that it had located through an internet search that Plaintiff had failed to

produce.  (*See* Aug. 2, 2012 Corres. 2–3, ECF No. 29-9.)  In response, Plaintiff produced

approximately one-hundred pages reflecting that she had copied portions of blogs and websites,

pasted them into an email, emailed them to her counsel, who, in turn, printed the pages out and

produced them to MEI.  Plaintiff did not accurately identify the source of the text.  Again, MEI

apprised Plaintiff that it considered her production to be deficient, explaining that Plaintiff's

counsel's proffered method of producing responsive documents was insufficient as it was not

guaranteed to capture the original and complete text, formatting, and images of a blog or

website.  (*See* Aug. 31, 2012 Corres. 3–4, ECF No. 29-10.)  MEI suggested production of

portable document format ("PDF") copies, but indicated that it was "amendable to their

production in any format that is reviewable and captures the documents in their original format."

(*Id.* at 3.)

       In her Memorandum in Opposition, Plaintiff describes herself as "an extensive blogger

and sophisticated user of the internet and social media/networking sites" who "finds blogging

and journaling to be a therapeutic form of release through creative expression, and an

opportunity to communicate about her Depression, Bi-Polar Disorder, and Anxiety with

sympathetic friends and family online."  (Pl.'s Mem. in Opp. 9, ECF No. 32.)  She posits that

"[g]iven [her] prolific collection of writings and use of internet social media, the scope of MEI's

request is extremely broad."  (*Id.*)  Plaintiff objects to MEI's request for production of screen

shots or PDFs on the grounds that it would be too burdensome.  Plaintiff explains as follows:

> Formatting all of this information to Defendant's satisfaction would be an incredible burden on Plaintiff, and is not required by the Federal Rules. Rule 34(b)(2)(E)(ii) permits a party to produce electronically stored information "in a form or forms in which it is ordinarily maintained." All of these blog and online journal entries are stored on external servers within multi-tiered web pages: the task of attempting to PDF each of the entries, along with all of their posted responses would not only be severely labor and cost -intensive, but would also be a form at unrepresentative of the form in which they are ordinarily maintained.

(*Id*. at 10.) As an alternative, Plaintiff offered to permit MEI direct password access to all of

Plaintiff's online journals, blogs, and social media/networking websites so that MEI could "have

access to original copies of each of the responsive documents and could copy, PDF, or print any

of the documents at its own convenience or expense." (*Id*.)

MEI counters that given Plaintiff's admission that she uses blogs and journals to

communicate about her health conditions, she cannot reasonably contest the relevancy or scope

of MEI's requests. MEI also posits that Plaintiff's admission that she is a sophisticated internet

user undermines her assertion that producing copies of her entries in a mutually agreeable format

would impose an incredible burden. MEI explains that it is reluctant to utilize her log-in and

password credentials to access information due to the risk of altering or otherwise affecting the

websites or the content of the websites. MEI further asserts that Plaintiff should not be permitted

to shift her obligation to search and produce responsive documents. Finally, MEI requests the

Court to grant it authority to obtain a forensic image of Plaintiff's iPad(s), personal computer(s),

and other computerized devices to gain access to the files and items that are responsive to its

request. In support of this request, MEI submits that this "may be the only means through which

MEI can obtain the information necessary to proceed with and defend this action." (Def.'s Mot.

12–13 n.13, ECF No. 29-1.)

Plaintiff's failure to convey the form it intended to use to produce the responsive ESI has

given rise to the present dispute over the appropriate format.  Because MEI did not designate a

specific format for producing any responsive ESI, Federal Rule of Civil Procedure 34(b)(D)

obligated Plaintiff to first notify MEI of the format she intended to use.  *See* Fed. R. Civ. P.

34(b)(D) ("[I]f no form was specified in the request—the party must state the form or forms it

intends to use.").  The Advisory Committee notes explain that the purpose of this requirement is

to resolve disputes over the appropriate format before the producing party undertakes the burden

and expense of production:

> The responding party also is involved in determining the form of production.  In the
> written response to the production request that Rule 34 requires, the responding party
> must state the form it intends to use for producing electronically stored information
> if the requesting party does not specify a form or if the responding party objects to
> a form that the request ing party specifies.  *Stating the intended form before the
> production occurs may permit the parties to identify and seek to resolve disputes
> before the expense and work of the production occurs.  A party that responds to a
> discovery request by simply producing electronically stored information in a form
> of its choice, without identifying that form in advance of the production in the
> response required by Rule 34(b), runs a risk that the requesting party can show that
> the produced form is not reasonably usable and that it is entitled to production of
> some or all of the information in an additional form.*  Additional tim e might be
> required to permit a responding party t o assess the appropriate form  or forms of
> production.

Fed. R. Civ. P. 34 Advisory Comm. Notes 2006 Amend., Subd. (b) (emphasis added).

Plaintiff's suggestion that her proffered production comports with Rule 34 is

disingenuous.  Rule 34(b)(2)(E)(ii) provides as follows:  "If a request does not specify a form for

producing electronically stored information, a party must produce it in a form or forms in which

it is ordinarily maintained or in a reasonably usable form or forms . . . ."  Fed. R. Civ. P.

34(b)(2)(E)(ii).  It is beyond dispute that the one-hundred-page email document with copied and

pasted excerpts from blog and website postings is not in the form "in which it is ordinarily

maintained."  Nor is Plaintiff's proffered production "in a reasonably usable form" given that her

14

production method strips the entries of their original and complete text, formatting, images, and likely the source.  Generally, where neither party specifies a format, an acceptable, default format consists of production of the ESI in static image form (such as PDF or tagged image file format "TIFF") as contrasted with native format with accompanying metadata.  *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Lit.*, 279 F.R.D. 447, 449  (S.D. Ohio 2012); *cf.* N.D. Ohio L.R. App. K, Default Standard for Discovery of Electronically Stored Info., Standard 6 ("If . . . the parties cannot agree to the format for document production, electronically stored information shall be produced to the requesting party as image files (*e.g.*, PDF or TIFF). When the image file is produced, the producing party must preserve the integrity of the electronic document's contents, *i.e.*, the original formatting of the document, its metadata and, where applicable, its revision history. After initial production in image file format is complete, a party must demonstrate particularized need for production of electronically stored information in [its] native format.").  Applied here, because neither party specified a particular format prior to production, at a minimum, Plaintiff should have produced the ESI in a static image form.

Plaintiff contends that formatting the responsive information to MEI's satisfaction would be unduly burdensome.  "'[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.'" *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 457 (6th Cir. 2008) (quoting *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).  "Specifically, the Federal Rules of Civil Procedure instruct district courts to limit discovery where its 'burden or expense . . . outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the

importance of the proposed discovery in resolving the issues.'"  *Surles*, 474 F.3d at 305 (quoting

Fed. R. Civ. P. 26(b)(2)(C)(iii)).

Here, the burden and expense Plaintiff articulates does not outweigh the benefit of

requested information.  MEI has limited the scope of its request such that it targets only

Plaintiff's blogging and online activity since 2009 that concern her workplace, health condition,

or other issues raised in her Complaint.  Given Plaintiff's admission that she utilizes journals to

communicate about her various health conditions, MEI's narrowed request is reasonably

calculated to discover information bearing on important issues in the case, namely, her heath,

which is central to her claims, as well as her damages.  MEI has proposed that Plaintiff produce

the ESI it seeks via PDFs, screen prints, or some other acceptable format.  Plaintiff does not

represent that she is unfamiliar with how to print out a screen shot or how to convert a screen

shot into a PDF image.  Rather, she acknowledges that she is a sophisticated internet and

computer user who utilized computers to work from home.  Plaintiff does not articulate what

expenses she would incur to convert the screen shots of her online postings into PDF format,

which she could presumably then transmit electronically.  Of course, if Plaintiff alternatively

chooses to print out the screen shots of her entries, she would incur the cost of printing and

making copies of the screen shots.  In the event that she is unable to afford to print and make

copies, MEI has offered to discuss a cost-shifting arrangement.  (*See* Def.'s Reply 11, ECF No.

33 (noting that although Plaintiff has never raised the issue of being unable to afford to make

copies of responsive documents, MEI "is more than amendable to discussing a cost-shifting

arrangement for future productions").)

Turning to the burdensomeness of the time commitment required to identify and print

16

responsive postings, Plaintiff fails to offer any evidence revealing the nature of her burden such as how long she expects it will take.  The Court anticipates, however, that Plaintiff's prior identification and production of responsive excerpts will make it easier for her to re-identify the responsive postings.  Regardless, that Plaintiff will again need to undertake the burden of reviewing her online activity is not attributable to MEI's unreasonableness, but instead to her counsel's failure to comply with the requirements of Rule 34.  *See* Fed. R. Civ. P. 34 Advisory Comm. Notes 2006 Amend., Subd. (b) ("A party that responds to a discovery request . . . without identifying [the proposed form of production] in advance . . . [as] required by Rule 34(b), runs a risk that the requesting party can show that the produced form is not reasonably usable and that it is entitled to production of some or all of the information in an additional form."); *Cf. Cenveo Corp. v. S. Graphic Sys.*, No. 08-5521, 2009 WL 4042898, at *1–2 (D. Minn. Nov. 18, 2009) (compelling responding party to re-reproduce documents in their native format embedded with metadata where party initially  produced documents in PDF format without complying with Rule 34(b)(2)(D)'s requirement that the producing party first state the intended form before production occurs).

Finally, contrary to Plaintiff's assertions, Rule 34(a) does not authorize her to provide MEI with her log-in credentials and passwords in lieu of producing responsive ESI.  Rather, the language Plaintiff relies upon simply makes clear that a discovering party "*may*" request another party to permit it to "inspect, copy, test, or sample" the electronic source.  Fed. Civ. P. 34(a)(1) (emphasis added).  MEI made no such request here.  Notwithstanding MEI's valid concerns that such access could give rise to risks of altering or affecting the data and websites, Plaintiff's proposal is rejected because it impermissibly shifts the burden onto MEI to sift

17

through her "prolific collection of writings" for responsive ESI.

In sum, Plaintiff is **ORDERED** to fully respond to Interrogatory Numbers 4 and 5 and

Document Requests 9 and 10 as subsequently narrowed by MEI, producing responsive ESI in a

static format (PDF or TIFF) or some other mutually agreed-upon format.  MEI's request to

obtain a forensic image of Plaintiff's computerized devices is **DENIED** as unnecessary in light

of this ruling.

### D.     Calendars & Record-Keeping Documents

Document Requests 12 and 13 ask Plaintiff to produce all calendars and similar

ledgers (electronic or paper) that relate to the subject matter of this lawsuit or to her former

employment with Micro Electronics.  MEI posits that Plaintiff's production with regard to these

requests is deficient because it received only calendars for select months.  In her Memorandum in

Opposition, Plaintiff represents that she has already produced "copies of all of her calendars and

records which contain any information relating to the subject matter of this lawsuit," describing

calendars that were not produced as "empty" and "un-annotated."  (Pl.'s Mem. in Opp. 11, ECF No.

32.)  Plaintiff further avers that she "is not concealing any documents or information pertaining to her

calendars."  (*Id*. at 12.)  She "renews her offer to permit inspection of all original calendars in her

possession at Defendant's convenience."  (*Id*.)

The Court agrees with Plaintiff that calendars with no entries would not be responsive to

MEI's requests in that they do not relate to the subject matter of this lawsuit or her former

employment.  MEI has offered no evidence suggesting Plaintiff possesses additional

documentation responsive to Document Requests 12 and 13 that she is refusing to supply.  If

MEI still would like to review the calendars that Plaintiff represents contain no entries, it is free

to accept her offer to inspect all of her original calendars.  Thus, with regard to Document

18

Requests 12 and 13, MEI's Motion to Compel is **DENIED**.

**E.      Sanctions Under Rule 37**

MEI asks this Court for an award of its attorneys' fees and costs incurred in attempting to resolve these ongoing discovery disputes and in bringing the instant Motion.  MEI asserts that it filed the instant Motion as a last resort, after numerous telephone conferences and exchanges of correspondence.  MEI posits that sanctions are particularly appropriate given that "Plaintiff has failed to heed this Court's [July 12, 2012 Order] addressing may of the same issues raised in this motion and the warning that her failure to produce all relevant information and documents would result in sanctions."  (Def.'s Mot. 15, ECF No. 29-1.)

Plaintiff counters that MEI is not entitled to sanctions under Rule 37 in light of her substantial compliance with the discovery requests.  Plaintiff further posits that an award of sanctions against her would be unjust given that she is severely disabled and has been unemployed for more than two years.  She describes herself as "indigent," reporting that "[s]he sometimes cannot afford her medications" and is "on the verge of losing her home and entering bankruptcy."  (Pl.'s Mem. in Opp. 14, ECF No. 32.)  Plaintiff submits that "an award of sanctions will not have the effect of producing additional discoverable material, and will only serve to punish an already indigent Plaintiff for delays caused by her medical conditions."  (*Id.*)

Rule 37(a)(5)(A) provides as follows:

> *If the Motion Is Granted* (*or Disclosure or Discovery Is Provided After Filing*).  If the m otion is granted—or if the di sclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the m ovant's reasonable expenses incurred in making the motion, including attorney's fees.  But the court must not order this payment if:
>
> > (i)      the movant filed the motion before attempting in good faith to obtain

the disclosure or discovery without court action;

(ii)     the  opposing party's nondisclosure, response, or objection     was substantially justified; or

(iii)     other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A).

The Court concludes that MEI is entitled to fees under Rule 37(a)(5)(A).  The Court advised that it would "require Plaintiff's counsel to pay Defendant's expenses incurred" in filing a motion to compel relating to the discovery requests at issue here should Plaintiff's continued refusal to fulfill her discovery obligations necessitate such a motion.  (*See* July 13, 2012 Order, 1–2, ECF No. 23.)  Despite Court intervention and numerous telephone conferences and correspondences between MEI's counsel and Plaintiff's counsel, Plaintiff's production remains deficient, due, in large part, to Plaintiff's counsel's unreasonableness.  For example, Plaintiff's counsel's insistence that MEI interpret Plaintiff's incomplete responses to interrogatories as admissions that she either does not possess or cannot recollect the information requested is legally unsupportable and especially unreasonable given her history of making false representations concerning the existence of information.  The same can be said for Plaintiff's counsel's insistence that MEI should just assume that she actually applied for the jobs she listed in a document she titled "monster.com Job searches - partial list of searches 3/2011 - present." Further, Plaintiff's counsel references the existence of email confirmations Plaintiff received upon applying for jobs, but neither produced the confirmations nor provided the information MEI requested in the event documents were no longer available.  Equally troubling is Plaintiff's counsel's failure to convey the form it intended to use to produce responsive ESI as required by Rule 34(b)(D) and his subsequent insistence that copying and pasting excerpts from blog and

20

website postings into an email comports with Rule 34.  Under these circumstances, the Court concludes that MEI is entitled to recover its reasonable attorneys' fees and expenses incurred in filing the subject Motion to Compel from Plaintiff's counsel, who advised Plaintiff on the format and sufficiency of her production.

## IV.

For the reasons set forth above, MEI's Motion to Compel is **GRANTED IN PART AND DENIED IN PART**.  (ECF No. 29.)  Plaintiff is **ORDERED** to fully respond to Interrogatory Numbers 4, 5, 9, and 12 and Document Requests 9, 10, and 29 **WITHIN THIRTY DAYS**.  If, after a good faith investigation, Plaintiff is unable to provide the requested information, she must explicitly state so under oath in a verified interrogatory response.  Plaintiff is **DIRECTED** to produce responsive ESI in a static format (PDF or TIFF) or some other mutually agreed-upon format.  In the event that Plaintiff is unable to afford to print or make copies necessary to fulfill her discovery obligations, she is **DIRECTED** to discuss a cost-shifting arrangement with MEI.  MEI's request to obtain a forensic image of Plaintiff's computerized devices is **DENIED**.  Plaintiff's counsel is **ORDERED** to pay MEI its reasonable attorneys' fees and expenses associated with bringing this Motion.  The Court encourages MEI and Plaintiff's counsel to reach an agreement concerning the appropriate amount of fees to be awarded.  In the event the parties cannot reach such an agreement, MEI shall file a supplemental memorandum in support of its requested attorneys' fees and expenses, setting forth information including the timekeeper, rate, and explanation of work, to the extent counsel may do so without violating the attorney-client privilege, **WITHIN FOURTEEN (14) DAYS OF THE DATE OF THIS ORDER**.

**IT IS SO ORDERED**.

Date:  January 11, 2013                          _____/s/ *Elizabeth A. Preston Deavers*_____
                                                          Elizabeth A. Preston Deavers
                                                          United States Magistrate Judge

22